**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-1677

DANIEL P. MOOK,

Plaintiff – Appellee,

v.

G. ANDREW HALL,

Defendant – Appellant,

and

CITY OF MARTINSVILLE, VIRGINIA,

Defendant.

Appeal from the United States District Court for the Western District of Virgina, at Danville.  Thomas T. Cullen, District Judge.  (4:23-cv-00028-TTC-JCH)

Argued:  March 19, 2026                        Decided:  August 4, 2026

Before NIEMEYER, QUATTLEBAUM, and RUSHING, Circuit Judges.

Vacated and remanded by published opinion.  Judge Rushing wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

**ARGUED:**  Nathan Henry Schnetzler, FRITH, ANDERSON & PEAKE, PC, Roanoke, Virginia, for Appellant.  Jack Kerdasha, WILLIAM & MARY LAW SCHOOL,

Williamsburg, Virginia, for Appellee. **ON BRIEF:** Austin L. Obenshain, FRITH ANDERSON & PEAKE PC, Roanoke, Virginia, for Appellant. Bryan Lammon, FINAL DECISIONS PLLC, Richmond, Virginia; Scott G. Crowley Sr., CROWLEY & CROWLEY, Glen Allen, Virginia; Jonathan Gharib, Student Counsel, Raahim, Zaidi, Student Counsel, Appellate & Supreme Court Clinic, WILLIAM & MARY LAW SCHOOL, Williamsburg, Virginia, for Appellee.

RUSHING, Circuit Judge:

This interlocutory appeal presents a legal question: Was it clearly established in November 2021 that an employer could not contact a certifying medical provider to authenticate an employee's Family and Medical Leave Act certification without first giving the employee an opportunity to cure any inauthenticity? We conclude the answer is no; therefore, we vacate the district court's contrary judgment denying qualified immunity to the defendant employer on this basis. On remand, the district court should address the antecedent question whether qualified immunity is an available defense to interference claims under the Act.

## I.

### A.

The Family and Medical Leave Act (FMLA) entitles covered employees "to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." *See* 29 U.S.C. § 2612(a)(1)(C). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. *Id.* § 2615(a)(1). An employer may, however, require that an employee's leave request be "supported by a certification issued by the health care provider" which states "the date on which the serious health condition commenced"; "the probable duration of the condition"; "the appropriate medical facts within the knowledge of the health care provider regarding the condition"; and "a statement that the eligible

3

employee is needed to care for the son, daughter, spouse, or parent and an estimate of the amount of time that such employee is needed." *Id.* § 2613(a), (b).

Federal regulations instruct employers to "advise an employee whenever the employer finds a certification incomplete or insufficient." 29 C.F.R. § 825.305(c). A certification is "incomplete" if "one or more of the applicable entries have not been completed." *Id.* And a certification is "insufficient" if "the information provided is vague, ambiguous, or non-responsive." *Id.* An employer must give an employee "seven calendar days . . . to cure any such deficiency." *Id.* "If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider." *Id.* § 825.307(a).

An employer may contact the health care provider, however, "for purposes of clarification and authentication." *Id.* "[A]uthentication means providing the health care provider with a copy of the certification and requesting verification that the information contained on the certification form was completed and/or authorized by the health care provider who signed the document; no additional medical information may be requested." *Id.* "Clarification means contacting the health care provider to understand the handwriting on the medical certification or to understand the meaning of a response." *Id.* An employer may seek clarification and authentication from a health care provider "after the employer has given the employee an opportunity to cure any deficiencies as set forth in § 825.305(c)," the provision addressing incomplete and insufficient certifications. *Id.*

4

B.

Plaintiff Daniel Mook is a former Assistant Commonwealth's Attorney for the City of Martinsville, Virginia. In May 2020, Mook took FMLA leave to care for his ailing mother. A year and a half later, he again requested FMLA leave for the same purpose.

To get his 2021 leave approved, Mook was asked to submit a completed FMLA certification to the City's human resources department. Mook filled out the certification form, including the third section titled "HEALTH CARE PROVIDER," which is supposed to be completed by a medical professional based on the professional's "medical knowledge, experience, and examination of the patient." J.A. 16. Mook filled out this section of the form based on information from the certification for his prior FMLA leave and his knowledge of his mother's condition. When Mook took his mother to a doctor's appointment, he presented the certification to Scott Schmidt, a registered nurse, for signature. Nurse Schmidt signed the certification. Mook then faxed it to the City's human resources department and to his supervisor, Commonwealth's Attorney Andrew Hall.

Sometime later, Hall's administrative assistant told him there "was a problem with the certification and that it appeared that [Mook] had . . . filled out the [section] that was supposed to be signed by the doctor." *Mook v. City of Martinsville*, No. 4:23-cv-00028, 2025 WL 1589282, at *2 (W.D. Va. June 5, 2025) (internal quotation marks omitted). The assistant also informed Hall that, according to Nurse Schmidt, Mook had told Nurse Schmidt "that he needed basically a work excuse signed" and Nurse Schmidt had not known "that he was signing something regarding family medical leave." *Id.* (internal quotation marks omitted). Hall understood that his assistant had spoken to the doctor's

5

office "to determine whether that was Mr. Schmidt's signature." *Id.* (internal quotation marks omitted).

On November 18, Hall called Mook to discuss the situation; their two phone conversations were recorded. Hall asked Mook whether he filled out the FMLA certification and whether he deceived Nurse Schmidt into signing it. Mook admitted to filling out the form himself but denied deceiving Nurse Schmidt. He explained that he had told Nurse Schmidt to make any necessary changes to information on the form. He also offered to take another certification to the doctor's office so that the doctor could fill out the medical provider section of the form herself. Despite Mook's explanation and offer to correct, Hall maintained that Mook had shown poor judgment by filling out the certification himself and that doing so cast doubt on his honesty. Hall gave Mook the opportunity to resign, and when Mook declined, Hall fired him.

## C.

Mook subsequently sued Hall and the City, alleging that they interfered with his FMLA rights by contacting his mother's medical provider in violation of FMLA regulations and then terminating his employment. Hall moved for summary judgment, arguing *inter alia* that he was entitled to qualified immunity. The district court assumed that qualified immunity is a defense to an FMLA interference claim but denied Hall's motion because it concluded that federal regulations clearly established Mook's right to an opportunity to cure any inauthenticity of the certification form before Hall contacted the health care provider. Hall then filed this interlocutory appeal.

6

## II.

We must first address a "threshold question" about our jurisdiction, "because if we lack jurisdiction 'the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Monaco v. WV Parkways Auth.*, 57 F.4th 185, 187 (4th Cir. 2023) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). The denial of summary judgment is an interlocutory order and generally not subject to immediate appeal. *See Williams v. Strickland*, 917 F.3d 763, 767 (4th Cir. 2019). Under the collateral order doctrine, however, appellate jurisdiction extends to "a 'small class' of orders 'that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action.'" *Adams v. Ferguson*, 884 F.3d 219, 223–224 (4th Cir. 2018) (quoting *Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)). Qualified immunity "is an immunity from suit rather than a mere defense to liability," and "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). Pursuant to the collateral order doctrine, we have jurisdiction over interlocutory appeals from the denial of qualified immunity at summary judgment, to the extent that such denial turns on an issue of law. *Id.* at 530; *Hicks v. Ferreyra*, 965 F.3d 302, 308 (4th Cir. 2020).

Applying these principles, we have jurisdiction over this appeal. The district court denied Hall's motion for summary judgment on the ground that he is "not entitled to qualified immunity" because federal regulations "clearly established" Mook's right to notice and an opportunity to cure the problem with his FMLA certification before Hall's office contacted the certifying medical provider. *Mook*, 2025 WL 1589282, at *7 (internal

7

quotation marks omitted). In other words, the denial of qualified immunity turned on a pure issue of law: whether the FMLA regulations clearly established Mook's right to a cure period in these circumstances. We accordingly have jurisdiction. *See Hicks*, 965 F.3d at 308; *see also Winfield v. Bass*, 106 F.3d 525, 529 (4th Cir. 1997) (en banc) ("[W]e possess jurisdiction to consider an appeal" from a decision denying summary judgment that "reject[s] a government official's claim of entitlement to qualified immunity to the extent that the official maintains that [his] conduct did not violate clearly established law.").

Mook argues that we lack jurisdiction because qualified immunity is not available as a defense to FMLA interference claims. He is incorrect. The "logically antecedent legal question of whether qualified immunity could *ever* be invoked" as a defense to an FMLA claim is also a "pure issue of law" that supports collateral order review. *United States ex rel. Citynet, LLC v. Gianato*, 962 F.3d 154, 159 (4th Cir. 2020). If qualified immunity is not available to FMLA defendants, that would be an alternative ground for affirming the district court's judgment denying Hall immunity, but it would have no effect on our jurisdiction over this appeal. *See id.* at 159–160 (denying motion to dismiss appeal for lack of jurisdiction and then holding that qualified immunity is not an available defense to claims under the False Claims Act). The district court "assume[d]" that qualified immunity "applies" to FMLA claims, *Mook*, 2025 WL 1589282, at *6 n.5, but nevertheless denied Hall immunity in a ruling that "turns on an issue of law," *Hicks*, 965 F.3d at 308 (internal quotation marks and emphasis omitted). We have jurisdiction to review that ruling.

8

III.

Turning to the merits of the district court's decision, our review is de novo.  *See Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016).  In this procedural posture, we accept the facts as articulated by the district court in its summary judgment order, viewed in the light most favorable to the plaintiff, Mook.  *Hicks*, 965 F.3d at 308–309.

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine "operates to ensure that before they are subjected to suit, [government officials] are on notice their conduct is unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted).  When the doctrine applies, a government official is entitled to immunity "unless '(1) [he] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time.'"  *Garrett v. Clarke*, 74 F.4th 579, 583–584 (4th Cir. 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)).  We have discretion to "'skip ahead to the question whether the law clearly established that the [official's] conduct was unlawful in the circumstances of the case,'" which we choose to do here.  *Brown v. Elliott*, 876 F.3d 637, 641 (4th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

"Clearly established means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful."  *Wesby*, 583 U.S. at 63 (internal quotation marks omitted).  In other words,

9

"existing law" must have placed the statutory or constitutional question "beyond debate." *Id.* (internal quotation marks omitted); *see White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam).

A.

Properly articulated, then, the question we face is this:  Was it clearly established in November 2021 that an employer could not contact a certifying medical provider to authenticate an employee's FMLA certification without first giving the employee an opportunity to cure any inauthenticity?  Neither Mook nor the district court identifies any caselaw clearly establishing this right.  They rely instead on the purported clarity of the FMLA regulations, in particular Section 825.307(a).

Section 825.307(a) states that an "employer may contact the health care provider for purposes of clarification and authentication of the medical certification . . . after the employer has given the employee an opportunity to cure any deficiencies as set forth in § 825.305(c)."  29 C.F.R. § 825.307(a).  According to Mook, this regulation clearly establishes an employee's right to "an opportunity to cure" an authenticity problem because problems of authenticity are clearly encompassed within the phrase "any deficiencies."  In Hall's view, by contrast, "any deficiencies as set forth in § 825.305(c)" refers only to the two types of deficiencies identified in Section 825.305(c), incompleteness and insufficiency.

We conclude that the regulations are not so clear as to put the question "beyond debate."  *Wesby*, 583 U.S. at 63 (internal quotation marks omitted).  Hall's interpretation of the regulations is certainly a reasonable one.  Indeed, three principles of textual

10

interpretation support Hall's reading. *See Harris v. Norfolk S. Ry. Co.*, 784 F.3d 954, 962 (4th Cir. 2015) ("We normally construe regulations using the same rules we employ to construe statutes.").

First, there's the relationship between Sections 825.305 and 825.307. "When interpreting a regulation, we do not read its language 'in isolation'" but rather in "context and with a view to [its] place in the overall [regulatory] scheme." *United States v. Boler*, 115 F.4th 316, 325 (4th Cir. 2024) (quoting *Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017)). Section 825.307(a) addresses an employer's ability to contact a health care provider for purposes of "clarification and authentication." Section 825.305(c), by contrast, addresses "incomplete or insufficient" certifications. Nowhere in Section 825.305(c) does the word "authentication" (or "clarification") appear.

The "opportunity to cure any deficiencies as set forth in § 825.305(c)" is reasonably read to refer to the "deficiencies" that are "set forth" in that provision—incompleteness and insufficiency. *See* 29 C.F.R. § 825.307(a). In fact, after defining when a certification is considered incomplete or insufficient, the provision then says that an employer must provide an employee with seven days "to cure any such deficiency." *Id.* § 825.305(c). "[S]uch deficiency" in Section 825.305(c) refers to certifications that are "incomplete or insufficient." *Id.* It makes sense to read "any deficiencies as set forth in § 825.305(c)" to refer to the same limited set of deficiencies. *Id.* § 825.307(a). Indeed, Section 825.307(a) does not use the word "deficiencies" to describe the need for authentication or clarification. *See id.* § 825.307(a). The use of "deficiencies" to describe only incompleteness and

11

insufficiency at least plausibly denotes a deliberate choice to exclude authentication and clarification from the meaning of "deficiencies."

Second, the plain meaning of "deficiencies" does not clearly cover authentication. The regulations do not define "deficiencies," so we turn to the ordinary meaning as expressed in contemporaneous dictionaries. *Johnson v. Zimmer*, 686 F.3d 224, 232–233 (4th Cir. 2012). A deficiency is "the absence of something essential; incompleteness." *Deficiency*, Webster's New World College Dictionary (5th ed. 2014). It is the quality of being "deficient," which is defined as "lacking in some essential; incomplete; defective" or "inadequate in amount, quality or degree; not sufficient." *Deficient*, Webster's New World College Dictionary (5th ed. 2014); *see also Deficiency*, Black's Law Dictionary (9th ed. 2009) ("A lack, shortage, or insufficiency.").

The ordinary meaning of "deficiencies" accords with the regulatory definitions of "incomplete" and "insufficient" certifications. A certification is "incomplete" when "one or more of the applicable entries have not been completed." 29 C.F.R. § 825.305(c). And a certification is "insufficient" when "the information provided is vague, ambiguous, or non-responsive." *Id.* To correct those problems, an employer needs additional information. So both "incomplete" and "insufficient" certifications, as defined in the regulations, are "lacking in some essential; incomplete; defective" or "inadequate in amount, quality or degree; not sufficient." *Deficient*, Webster's New World College Dictionary (5th ed. 2014). They clearly constitute "deficiencies" within the ordinary meaning of the term.

12

By contrast, the FMLA regulations define "authentication" as "providing the health care provider with a copy of the certification and requesting verification that the information contained on the certification form was completed and/or authorized by the health care provider who signed the document." 29 C.F.R. § 825.307(a). That definition does not necessarily imply that the certification is "lacking" or "inadequate" in any respect. *Deficient*, Webster's New World College Dictionary (5th ed. 2014). Indeed, the regulation specifies that "no additional medical information may be requested" when an employer contacts a health care provider for authentication purposes. 29 C.F.R. § 825.307(a). The same is arguably true of "clarification," the other category listed in Section 825.307(a), which means asking a provider to explain what she already wrote in the certification and which cannot include a request for "additional information beyond that required by the certification form." *Id.*

A reasonable reader, therefore, may discern a mismatch between "deficiencies," which connote a lack of essential content in the certification, and "authentication" and "clarification," which do not. Section 825.307(a) arguably reinforces this distinction by authorizing an employer to "contact the health care provider for purposes of clarification and authentication" even when a certification is "complete and sufficient," that is, lacking no necessary "information." *Id.* § 825.307(a). Accordingly, a reasonable official could believe that inauthenticity is not one of the deficiencies that employers must afford employees an opportunity to cure before contacting a certifying health care provider.

Third, the amendment history of Section 825.307(a) supports Hall's interpretation. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*

13

256–260 (2012) (explaining that, within the reenactment canon, "a significant change in language is presumed to entail a change in meaning").  The Department of Labor overhauled Section 825.307(a) in November 2008.  *See The Family and Medical Leave Act of 1993*, 73 Fed. Reg. 67934, 68072 (Nov. 17, 2008).  The previous version of the provision stated that "a health care provider representing the employer may contact the employee's health care provider, *with the employee's permission*, for purposes of clarification and authenticity of the medical certification." 29 C.F.R. § 825.307(a) (2008) (emphasis added).  The amended version removed the phrase "with the employee's permission," along with other substantial changes.[1]  *Id.* § 825.307 (2009).  No substantive changes have been made to Section 825.307(a) since then.  *See id.* § 825.307 (2013).  This change further supports the reasonableness of Hall's view that he was not required to notify Mook before contacting the doctor's office for authentication purposes.  At a minimum, these three interpretive tools—context, plain meaning, and amendment history—together demonstrate that not "every reasonable official would interpret [the FMLA regulations] to establish the particular rule [Mook] seeks to apply." *Wesby*, 583 U.S. at 63.

---

[1] The 2008 amendments also added a reference to the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule.  As amended, Section 825.307(a) states that "[t]he requirements of the" HIPAA Privacy Rule "must be satisfied" when covered information "is shared with an employer by a HIPAA-covered health care provider."  The regulation contemplates that an employee will be asked to complete a HIPAA authorization form with his health care provider, at which point he can "choose[] not to provide the employer with authorization allowing the employer to clarify the certification with the health care provider." 29 C.F.R. § 825.307(a); *see* 73 Fed. Reg. at 68019.  The HIPAA-related amendments to Section 825.307(a) do not mention authentication.

14

B.

We do not find Mook's counterarguments persuasive.  First, Mook highlights the breadth of the word "any" within the phrase "any deficiencies" in Section 825.307(a).  Of course, when "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary (1976)).  But regardless of the breadth of "any," the word it describes, "deficiencies," limits the sweep of the regulation.  As already discussed, it is not clearly established that an employer's desire to authenticate a certification is a "deficiency" that requires a cure period.

Second, Mook argues that the phrase "as set forth in § 825.305(c)" applies the *procedures* of Section 825.305(c)—namely the seven-day cure period—to clarification and authentication, the subjects of Section 825.307(a).  This second argument fails for a similar reason as the first.  The procedures described in Section 825.305(c) apply only to "cur[ing] any deficiencies," which plausibly excludes authenticating a certification.  29 C.F.R. § 825.307(a).

Third, Mook invokes the surplusage canon, under which we presume that "each word" used in a legal text "is there for a reason."  *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017).  He argues that Hall's interpretation of Section 825.307(a) merely restates what Section 825.305(c) already says.  In Mook's view, because Section 825.305(c) already provides a cure period for deficiencies of incompleteness and insufficiency, the reference to Section 825.305(c) in Section 825.307(a) must do something more; specifically, it must extend the cure period to authentication and clarification.  But

15

we discern no surplusage here.  Under Hall's reading, Section 825.307(a) requires employers to comply with Section 825.305(c) by providing a cure period for incomplete and insufficient certifications *before* contacting a health care provider for authentication or clarification purposes.  Accordingly, Section 825.307(a) imposes an order of operations absent from Section 825.305(c), and so is not surplusage under Hall's interpretation.

*     *     *

For the foregoing reasons, we conclude it was not clearly established in November 2021 that an employer must first give an employee an opportunity to cure any inauthenticity of an FMLA certification before contacting the certifying medical provider to authenticate the certification.  The FMLA regulations mandate a seven-day period "to cure any deficiencies as set forth in § 825.305(c)," and a reasonable person could understand the word "deficiencies" not to include "authentication."   29 C.F.R. § 825.307(a).  Accordingly, "the contours of the legal rule" Mook asserts and the district court adopted were not "'so well defined that it [was] clear to a reasonable [official]'" in Hall's position "'that his conduct was unlawful in the situation he confronted.'"  *Garrett*, 74 F.4th at 584 (quoting *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam)).  We therefore vacate the district court's judgment.

IV.

Having rejected the district court's basis for denying Hall qualified immunity, we return to the "logically antecedent legal question" whether qualified immunity is ever available as a defense to an FMLA interference claim.  *Citynet*, 962 F.3d at 159.  The question must be asked, because we cannot "assume[] the immunity exists whenever a

16

public official is sued" in his individual capacity. *Stramaski v. Lawley*, 44 F.4th 318, 329 (5th Cir. 2022) (Costa, J., concurring). Although qualified immunity is a defense to many claims under 42 U.S.C. § 1983, its application to other statutes is a question of statutory interpretation. *See*, *e.g.*, *Citynet*, 962 F.3d at 159–160 (holding that qualified immunity is not a defense under the False Claims Act); *Stramaski*, 44 F.4th at 326–328 (remanding for district court to determine whether qualified immunity is a defense under the Fair Labor Standards Act).

Our Court has not resolved whether qualified immunity is an available defense for FMLA interference claims. The district court expressed "concerns about applying qualified immunity" to the FMLA, but it did not decide the question. *Mook*, 2025 WL 1589282, at *6 n.5. And although some circuits have applied qualified immunity in FMLA cases, none have confronted and addressed the pertinent question of statutory interpretation. *See*, *e.g.*, *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770–771 (5th Cir. 2015) (granting state official qualified immunity for FMLA interference claims without addressing whether the statute incorporates immunity); *Sterling v. Bd. of Trs. of Univ. of Ark.*, 42 F.4th 901, 905 (8th Cir. 2022) (noting prior circuit decision granting qualified immunity for an FMLA retaliation claim and remanding for district court to consider defendant's immunity defense to FMLA claims). Courts appear to have simply assumed the doctrine applies. But we have no license to immunize government officials from liability for statutory violations when Congress did not create or incorporate such immunities in the statutory scheme. *See Tower v. Glover*, 467 U.S. 914, 922–923 (1984).

17

Therefore, before granting Hall immunity from Mook's interference claim, we must determine whether Congress incorporated the immunity defense into the FMLA.

On appeal, the parties have discussed relevant considerations for resolving this question. They have observed that the FMLA says nothing about immunity. They have also acknowledged that the Supreme Court has accorded certain government officials immunity from suits under 42 U.S.C. § 1983, even though that statute is also silent about immunity, when the Court has determined that "the 'tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine.'" *Wyatt v. Cole*, 504 U.S. 158, 163–164 (1992) (quoting *Owen v. City of Independence*, 445 U.S. 622, 637 (1980)). And the parties have debated what can be inferred from the fact that Congress included a limited good-faith defense in the FMLA. *See* 29 U.S.C. § 2617(a)(1)(A)(iii); *compare Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998) ("When Congress itself provides for a defense to its own cause of action, it is hardly open to the federal court to graft common law defenses on top of those Congress creates."), *with Blake v. Wright*, 179 F.3d 1003, 1012 (6th Cir. 1999) ("[S]imply because [a statute] provides a defense to . . . violations does not necessarily imply that qualified immunity . . . does not apply . . . .").

We are mindful, however, that Hall's ability to brief these issues was limited to his reply, that no court of appeals has opined on the relevant legal question, and that the district court did not address it. Accordingly, we leave these matters for the district court to consider in the first instance on remand.

18

V.

The district court erred in concluding that Mook had a clearly established right to an opportunity to cure any inauthenticity of his FMLA certification before his employer contacted the certifying health care provider. Because Hall would be entitled to qualified immunity on these facts if such immunity is available for FMLA interference claims, we remand for the district court to resolve whether qualified immunity applies to the FMLA.

*VACATED AND REMANDED*